## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RAVN AIR GROUP, INC., *et al.*,<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 20-10755 (BLS)<br><br>Jointly Administered |
| RAVN AIR GROUP, INC., *et al.*,<br><br>        Plaintiff,<br><br>v.<br><br>BNP PARIBAS, solely in its capacity as agent, and U.S. BANK NATIONAL ASSOCIATION, solely in its capacity as security trustee<br><br>        Defendants. | Adversary Case No. 20-_____ |

## **COMPLAINT**

The Official Committee of Unsecured Creditors (the "Committee"), appointed in the

Chapter 11 Cases of the above-captioned debtors (collectively, the "Debtors" in the "Chapter 11

Cases"), by and through its undersigned counsel, on behalf of and as representative of the

Debtors' estates, and based on knowledge, information, belief and the results of its investigation

to date, alleges as follows:

---

[1]  The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754). The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

## NATURE OF ACTION

1.      The Defendants failed to properly perfect or attach their liens against assets of the Debtors.  In some instances, the Loan Documents (as defined below) did not sufficiently identify commercial tort claims purportedly secured, or give proper notice to third parties of the lien.  Other times, the encumbrances were not filed of record or annotated on a vehicle title.  Further, certain assets of the Debtors, such as valuable ground leases, are entirely unencumbered, and available to satisfy the claims of the Debtors' estate.  The Committee brings this action for the benefit of the estate and its unsecured creditors.

2.      This adversary proceeding seeks: (i) a declaratory judgement that certain property of the Debtors is not subject to liens or security interests asserted by the Defendants; and (ii) orders avoiding certain improperly perfected or unperfected liens or security interests asserted by the Defendants against the Debtors under sections 544, 550, and 551 of the Bankruptcy Code and disallowing Defendants claims pending final resolution of the claims in this adversary proceeding.

## JURISDICTION AND VENUE

3.      This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this complaint under 28 U.S.C. § 1334(b), in that this is a civil proceeding relating to the underlying case arising under chapter 11 of title 11 the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended and modified, the "Bankruptcy Code").

5.      This adversary proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O), and the Court may enter a final order consistent with Article III of the United States Constitution.

6.      This Court has jurisdiction over Defendants pursuant to Bankruptcy Rule 7004 because this involves claims or liens against property of the estate and they have appeared in the cases filed under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") and asserted liens on the property of the estate.

7.      Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409

8.      The Committee has standing to pursue this complaint pursuant to *Order Approving Stipulation and Agreed Order Among the Debtors and the Official Committee of Unsecured Creditors Granting Standing to Bring Derivative Actions on Behalf of the Debtors' Estates* [Docket No. 229].

## THE PARTIES

9.      On April 20, 2020, the Office of the United States Trustee appointed the Committee to represent the interests of all general unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code. *See* Docket[2] No. 84. The Committee is vested with, among other things, the powers described in section 1103 of the Bankruptcy Code, including the power to investigate the acts, conduct, assets, liabilities, and financial condition of the Debtors. The Committee brings this action on behalf of the Debtors' estates.

10.      Defendant BNP Paribas is the administrative agent (in such capacity, the "Prepetition Administrative Agent") and collateral agent (in such capacity, the "Prepetition

---

[2]      References to "Docket" herein shall mean and refer to the docket in the above captioned bankruptcy case.

Collateral Agent," under that certain Credit Agreement (as amended, restated, supplemented, or otherwise modified from time to time, the "Credit Agreement") entered into on July 31, 2015 by and among Ravn Air Group, Inc., as borrower, certain of the other Debtors, as guarantors, and certain lenders (collectively, the "Prepetition Secured Lenders").  BNP Paribas is also the agent on behalf of certain lenders under the DIP Credit Agreement (as defined below) and in such capacity, is the DIP Agent (as defined below).

11.    Defendant U.S. Bank National Association is the security trustee (the "Prepetition Security Trustee," and collectively with Defendant BNP Paribas, "Defendants") for the benefit of the Prepetition Secured Parties, under that certain Aircraft and Engine Mortgage and Aircraft Lease Agreement dated as of August 4, 2015 (the "Pledge and Security Agreement").

## BACKGROUND

### A.    Debtors' Bankruptcy Cases

12.    On April 5, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

### B.    Existing Credit Facility

13.    According to the Debtors, on July 31, 2015 Ravn Air Group, Inc., as borrower, certain of the other Debtors, as guarantors, and the Prepetition Secured Lenders entered into the Credit Agreement. *See Declaration of John Mannion in Support of the Chapter 11 Petitions and First Day Motions* [Docket No. 5], ¶ 10.  The Credit Agreement included a term loan of up to $95 million and revolving loans in the aggregate amount of up to $15 million (the "Prepetition

Facility"). *Id.*  As of the March 31, 2020, a total of approximately $90,907,954.51 exclusive of interest and fees payable under the Credit Agreement was owing to the Prepetition Secured Parties. *Id.*

14.    Concurrent with the execution and delivery of the Credit Agreement, the Debtors and the Prepetition Secured Parties entered into that certain Security Agreement dated July 31, 2015 (as amended, restated, supplemented, or otherwise modified from time to time, the "Security Agreement") granting the Prepetition Collateral Agent, for the benefit of the Prepetition Secured Parties, security interests in certain pledged collateral (the "Prepetition Pledged Collateral").  The Security Agreement is attached hereto as **Exhibit A**.

15.     The Security Agreement granted to the Prepetition Collateral Agent, other than specific "Excluded Property" (as defined in the Security Agreement) a lien on and security interest in all of the right, title, and interest of the Debtors in, to and under the following property, wherever located, and whether now existing or hereafter arising or acquired from time to time:

(i)     all Receivables;

(ii)    all Equipment, Goods, Inventory, and Fixtures;

(iii)   all Contracts;

(iv)    all Letters of Credit and Letter-of-Credit Rights;

(v)     all Securities Collateral;

(vi)    all Documents;

(vii)   all Investment Property;

(viii)  all Intellectual Property Collateral;

(ix)    the Commercial Tort Clams described on Schedule 9 to the applicable Perfection Certificate, if any;

(x)    all General Intangibles (including without limitation any beneficial interests held by any Pledgor in the Owner Trust);

(xi)    all Money and all Deposit Accounts, Securities Accounts and Commodity Accounts;

(xii)    all Supporting Obligations;

(xiii)    all books and records relating to the Pledged Collateral described in clauses (i) through (xii) above and clause (xiv) below; and

(xiv)    to the extent not covered by clauses (i) through (xiii) of this sentence, all other personal property of the Pledgor, whether tangible or intangible, and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty, or guaranty payable to the Debtors' from time to time with respect to any of the foregoing.[3]

16.    The Debtors further executed and delivered to U.S. Bank, National Association, as security trustee (the "Prepetition Security Trustee") for the benefit of the Prepetition Secured Parties, security interests in certain assets, pursuant to the terms of that certain Aircraft and Engine Mortgage and Aircraft Lease Agreement (the "Pledge and Security Agreement," and collectively with the Credit Agreement, Security Agreement and any and all other related documents, the "Loan Documents") dated as of August 4, 2015 (the "Prepetition Collateral"). *Id.* at ¶ 11.  The Pledge and Security Agreement is attached hereto as **Exhibit B**.

17.    The Pledge and Security Agreement granted to the Prepetition Security Trustee, other than specific "Excluded Property" (as defined in the Pledge and Security Agreement) a lien on and security interest in all of the right, title, and interest of the Debtors in, to and under the following property, wherever located, and whether now existing or hereafter arising or acquired from time to time:

(i)    all Securities Collateral;

(ii)    all Air Carrier Certificates;

---

[3]    *See* Security Agreement at § 2.1.

(iii)    all Aircraft Permits;

(iv)    all books and records relating to the Prepetition Collateral; and

(v)    all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all Proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtors from time to time with respect to any of the foregoing; provided however, that the security interest created by the Security Agreement does not include any Excluded Property (as defined in the Pledge and Security Agreement).[4]

### C.    Debtor-in-Possession Financing

18.    On the Petition Date , the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364, and 507 and Bankruptcy Rules 2002, 4001, and 6004 (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Superpriority Financing, (II) Authorizing the Debtors' Limited Use of Cash Collateral, (III) Granting Adequate Protection of the Prepetition Secured Parties, (VI) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 13] (the "DIP Motion").

19.    Under the terms of the DIP Credit Agreement, attached as Exhibit B to the DIP Motion, certain Prepetition Secured Parties would act as the DIP Secured Parties (as defined below) with BNP Paribas serving as DIP Agent (as defined below).  The DIP Credit Agreement purports to provide liens (the "DIP Liens") on substantially all assets of the Debtors (the "DIP Collateral"), including a schedule of tracts of land of real property owned by the state of Alaska and leased to the Debtors (the "Ground Leases") through a Real Property Mortgage.  *See* DIP Credit Agreement at § 5.12, Schedule 3.05(b).

20.    On April 30, 2020, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Bankruptcy Rules 2002, 4001, and 6004 (I) Authorizing*

---

[4]    *See* Pledge and Security Agreement at §2.1.

*the Debtors to Obtain Postpetition Senior Secured Superpriority Financing, (II) Authorizing the Debtors' Limited Use of Cash Collateral, (III) Granting Adequate Protection of the Prepetition Secured Parties, and (IV) Granting Related Relief* [Docket No. 148] (the "Final DIP Order").

21.    The Final DIP Order grants the DIP Liens for the benefit of BNP Paribas, as administrative agent (in such capacity, the "DIP Agent") for itself and certain other financial institutions (collectively, in their capacities as such, the "DIP Lenders" and together with the DIP Agent, the "DIP Secured Parties"), with certain conditions, among others, that "to the extent not expressly prohibited by law or contract, all of those items and types of collateral not governed by Article 9 of the Uniform Commercial Code, including, without limitation, licenses issued by any federal or state regulatory authority, any leasehold or other real property interests, and commercial tort claims of the Debtors . . . ."  Final DIP Order at ¶ 15 (emphasis added).

### D.    Debtors' Stipulations

22.    Paragraphs E and F of the Final DIP Order set forth certain of the Debtors' admissions, stipulations, and agreements including, among other things, that the Debtors are indebted for obligations under the Credit Agreement, and that such obligations are secured by valid and perfected liens on substantially all of the Debtors assets and properties.  Final DIP Order at ¶¶ E and F.

23.    The stipulations in paragraphs 19 and 20 of the Final DIP Order represented a compromise between the Debtors and the Defendants that shall be binding on "each other party in interest . . . including, without limitation, the Committee," unless the Committee files a claim objection or a motion seeking standing to file an adversary proceeding within specified deadlines. *See* Final DIP Order ¶ 20. As to any such challenges brought by the Committee with respect to the Defendants, the challenge deadline was June 19, 2020.  Pursuant to paragraph 20

8

of the Final DIP Order, the Committee and the Prepetition Collateral Agent agreed to extend the challenge period to the earlier of (i) the entry of the order confirming the *Chapter 11 Plan of Liquidation of RAVN Air Group, Inc. and its Affiliated Debtors* [Docket No. 323], and (ii) July 17, 2020.

### COMMITTEE INVESTIGATION

24.     The Committee and its professionals commenced an investigation of, among other things, the validity, enforceability, priority and extent of the Credit Agreement, the liens on and security interests in the Debtors' assets purportedly securing the Prepetition Facility, and potential claims and causes of action against the Defendants and Prepetition Secured Parties.

25.     By reviewing the public records, documents from the Defendants, and the Debtors' files, the Committee learned that, as described in more detail below, the Defendants either do not hold a security interest in, or had not properly filed documents to perfect a lien in several instances (the "Unencumbered Interests").

26.     Based on the Committee's review of the Loan Documents, there was no attempt by the Prepetition Secured Parties to attach liens on the Ground Leases under the Security Agreement or the Pledge and Security Agreement.  Moreover, the Committee was not provided, nor could it locate, any mortgage pledging interest in the Ground Lease to the Prepetition Secured Parties.  A list of these Ground Leases by county at issue in this Complaint is attached as **Exhibit C**.[5]

27.     Further, a review of the Ground Leases makes clear that the state of Alaska, as the lessor, will not allow liens on the Ground Leases, but may allow assignment of a Ground Lease for security purposes, only with the lessor's express consent.  The Committee is informed that

---

[5]     The list Ground Leases attached as Exhibit C is intended to be illustrative of the Ground Leases discovered though the Committee's investigation.  To the extent additional Ground Leases are discovered with similar language prohibiting liens, Plaintiff requests similar relief.

the Debtors did not request nor did the Debtors receive permission from the lessor to assign the Ground Leases for security purposes to any party, including the DIP Parties.

28.     The Committee is informed that on or about May 16, 2019, Peninsula Aviation Services, Inc. ("PASI") became a party to the Credit Agreement and certain other Loan Documents.  However, based on the Committee's review of public records, neither Defendant timely filed a UCC-1 financing statement against PASI.  Under the loan documents and applicable law, for a lien to be perfected against a bona fide purchaser for value without notice, the Prepetition Secured Parties were required to file a UCC-1 financing statement in the applicable filing office.[6]

29.     Furthermore, the Committee is informed that the Loan Documents omit the necessary identifying descriptions for the commercial tort claims (the "Commercial Tort Claims").  The Security Agreement lists as Prepetition Pledged Collateral "the Commercial Tort Clams described on Schedule 9 to the applicable Perfection Certificate, if any."  *See* Security Agreement at §2.1.  A review of the Security Agreement reveals that no Commercial Tort Claims were listed under "Schedule 9" and no supplements to the section have been provided to the Committee.

30.     The Committee is also informed that, under the Security Agreement, Defendants were granted a security interest in the Debtors' deposit accounts, except to the extent that such deposit accounts constitute Excluded Property (as defined in the Security Agreement).  *See* Security Agreement at §2.1.  Based on the Committee's review of the Loan Documents, the Debtors maintain Deposit Accounts with First National Bank of Alaska, Wells Fargo, and US Bank.  To perfect its security interest over the Debtors' deposit accounts, Defendants were

---

[6]     The security interest of the DIP Parties in certain Ground Leases in which PASI is the lessee is explicitly addressed in the Final DIP Order.  *See* Final DIP Order at ¶ 39.  The validity of the DIP Liens on those specific Ground Leases are not included as part of this Complaint.

required to maintain control over the Debtors' deposit accounts.  For example, certain of the Debtors and Prepetition Secured Parties entered into that certain Deposit and Securities Account Control Agreement dated as of November 24, 2015 with the Prepetition Collateral Agent and First National Bank of Alaska, as depositary.  However, no similar agreement exists with respect to the Debtors' Wells Fargo and US Bank deposit accounts ("Unencumbered Accounts").

31.    Under the Loan Documents, if requested by the Prepetition Collateral Agent, each Debtor was required to deliver to the Prepetition Collateral Agent originals of the certificates of title or ownership for the motor vehicles (and any other equipment covered by the certificates of title or ownership, collectively the "Motor Vehicles") owned by it, with the Prepetition Collateral Agent listed as lienholder therein.  From the Committee's review of the Loan Documents, such request was not made and certificates of title or ownership were not delivered to the Prepetition Collateral Agent.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Against All Defendants)**

### Declaratory Judgment that the Defendants Maintain
### No Security Interest in the Ground Leases

32.    The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

33.    A review of the Loan Documents shows that the Ground Leases were not included as part of the Prepetition Collateral or Prepetition Pledged Collateral under the Loan Documents, and a review of the Ground Leases makes clear that the lessor will not allow liens on the leases, but may allow assignment of the lease for security purposes, only with the lessor's express consent, which event did not occur.

11

34.     Despite requests, neither the Debtors nor the Defendants have provided the Committee with evidence of a perfected security interest in, or perfected lien on, the Ground Leases.

35.     The Debtors have made no request to nor have the Debtors received permission to assign the Ground leases for security purposes.

36.     The Final DIP Order prohibits the attachment of DIP liens on leasehold and other real property interests where prohibited by contract.

37.     Accordingly, the Debtors' estates are entitled to a declaratory judgment that the Defendants maintain no security interest in the Ground Leases.

## SECOND CLAIM FOR RELIEF
### (Against All Defendants)

### Avoidance of Unperfected Liens and Security Interests in
### the Ground Leases Pursuant to 11 U.S.C. §§ 544, 550 and 551.

38.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

39.     To the extent the Prepetition Secured Parties sought to attach a lien on the Ground Leases, the Prepetition Secured Parties failed to properly perfect their purported liens on and security interests in the Ground Leases in compliance with applicable law because they did not record  mortgages or like documents to perfect the lien.

40.     Any liens or security interests of the Defendants in the Ground Leases as of the Petition Date are avoidable pursuant to sections 544(a)(3) of the Bankruptcy Code.

41.     Because the Prepetition Secured Parties do not have properly perfected liens on or security interests in the Ground Leases, any and all purported liens on and security interests in the Ground Leases should be avoided pursuant to section 544(a)(3) of the Bankruptcy Code, and such property or the value of such property, to the extent previously transferred, should be

recovered by the Debtors' estates pursuant to section 550(a) of the Bankruptcy Code and/or automatically preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

42.     Accordingly, the Committee is entitled to a judgment avoiding the Defendants' unperfected liens on or security interests in the Ground Leases.

### THIRD CLAIM FOR RELIEF
### (Against All Defendants)

### Avoidance of Unperfected Liens and Security Interests in
### the PASI Assets Pursuant to 11 U.S.C. §§ 544, 550 and 551.

43.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

44.     The Defendants failed to properly perfect their purported liens on and security interests in the PASI Assets in compliance with applicable law because they did not record a UCC-1 financing statement, certificates of title or ownership, deed of trust, mortgage, or like document to perfect the lien.

45.     Any liens or security interests of the Defendants in the PASI Assets as of the Petition Date are avoidable pursuant to sections 544(a)(1) of the Bankruptcy Code.

46.     Because the Defendants do not have properly perfected liens on or security interests in the PASI Assets, any and all liens on and security interests in the PASI Assets should be avoided pursuant to section 544(a)(1) of the Bankruptcy Code, and such property or the value of such property, to the extent previously transferred, should be recovered by the Debtors' estates pursuant to section 550(a) of the Bankruptcy Code and/or automatically preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

47.     Accordingly, the Committee is entitled to a judgment avoiding the Defendants' unperfected liens on or security interests in the PASI Assets.

## FOURTH CLAIM FOR RELIEF
### (Against All Defendants)

## Declaratory Judgment that the Defendants Maintain
## No Security Interest in the Commercial Tort Claims

48.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

49.     The Loan Documents omit the necessary identifying descriptions for the Commercial Tort Claims. Proper and sufficient identification is required for a lien to attach. Because the Loan Documents and attachments thereto do not identify the Commercial Tort Claims Defendants purport to have a security interest in, the Defendants' liens do not attach to them.

50.     Accordingly, the Debtors' estates are entitled to a declaratory judgment that the Defendants maintain no security interest in the Commercial Tort Claims.

## FIFTH CLAIM FOR RELIEF
### (Against All Defendants )

## Avoidance of Unperfected Liens and Security Interests in
## the Unencumbered Accounts Pursuant to 11 U.S.C. §§ 544, 550 and 551.

51.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

52.     The Prepetition Collateral Agent failed to properly perfect its purported liens on and security interests in the Unencumbered Accounts in compliance with applicable law because they did not obtain control of the accounts.

53.     Any liens or security interests of the Defendants in the Unencumbered Accounts as of the Petition Date are avoidable pursuant to sections 544(a)(1) of the Bankruptcy Code.

54.     Because the Defendants do not have properly perfected liens on or security interests in the Unencumbered Accounts, any and all liens on and security interests in the

Unencumbered Accounts should be avoided pursuant to section 544(a)(1) of the Bankruptcy Code, and such property or the value of such property, to the extent previously transferred, should be recovered by the Debtors' estates pursuant to section 550(a) of the Bankruptcy Code and/or automatically preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

55.     Accordingly, the Committee is entitled to a judgment avoiding the Defendants' unperfected liens on or security interests in the Unencumbered Accounts.

### SIXTH CLAIM FOR RELIEF
### (Against All Defendants)

### Declaratory Judgment that the Defendants Maintain
### No Security Interest in the Motor Vehicles

56.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

57.     Defendants did not annotate the certificates of ownership or title of the Motor Vehicles to sufficiently or properly identify their security interest or liens. Proper and sufficient identification is required for a lien to attach. Because the certificates of ownership or title do not properly or sufficiently identify the security interests or liens, the Defendants' liens do not attach to them.

58.     Accordingly, the Debtors' estates are entitled to a declaratory judgment that the Defendants maintain no security interest in the Motor Vehicles.

### SEVENTH CLAIM FOR RELIEF
### (Against All Defendants)

### Avoidance of Unperfected Liens and Security Interests in
### the Motor Vehicles Pursuant to 11 U.S.C. §§ 544, 550 and 551.

59.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

60.     To the extent the Prepetition Secured Parties attached liens on the Motor Vehicles, the Defendants failed to properly perfect their purported liens on and security interests in the Motor Vehicles in compliance with applicable law because they did not annotate the certificates of ownership or title to reflect a security interest or lien.

61.     Any liens or security interests of the Defendants in the Motor Vehicles as of the Petition Date are avoidable pursuant to sections 544(a)(1) of the Bankruptcy Code.

62.     Because the Defendants do not have properly perfected liens on or security interests in the Motor Vehicles, any and all liens on and security interests in the Motor Vehicles should be avoided pursuant to section 544(a)(1) of the Bankruptcy Code, and such property or the value of such property, to the extent previously transferred, should be recovered by the Debtors' estates pursuant to section 550(a) of the Bankruptcy Code and/or automatically preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

63.     Accordingly, the Committee is entitled to a judgment avoiding the Defendants' unperfected liens on or security interests in the Motor Vehicles.

[*Remainder of page intentionally left blank.*]

16

**WHEREFORE**, the Committee respectfully requests that the Court enter a judgment: (i) declaring that the Defendants have no security interest in the Unencumbered Interests or Unidentified Interests; and (ii) in the alternative, avoiding under 11 U.S.C. § 544(a) and 550 as unperfected any security interest of the Defendants in the Unencumbered Interests.

Dated: June 22, 2020
       Wilmington, Delaware

Respectfully submitted,

**POLSINELLI PC**

*/s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
Brenna A. Dolphin (Del. Bar No. 5604)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
skatona@polsnielli.com
bdolphin@polsinelli.com

-and-

**BROWN RUDNICK LLP**
Robert J. Stark (pro hac vice)
Oksana P. Lashko (pro hac vice)
Max D. Schlan (pro hac vice)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
rstark@brownrudnick.com
olashko@brownrudnick.com
mschlan@brownrudnick.com

*Counsel to the Official Committee of Unsecured Creditors*